**CIBA–GEIGY CORPORATION**

v.

**UNITED STATES.**

**C.D. 4713; Court No. 74–8–02267.**

United States Customs Court.

Aug. 24, 1977.

Bronz & Farrell, Washington, D.C. (George Bronz and Edward J. Farrell, Washington, D.C., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C. (Herbert P. Larsen, Trial Atty., New York City), for defendant.

WATSON, Judge:

Plaintiff is challenging the tariff classification of an imported antibiotic drug with the trademark name of Rimactane. It was classified under item 407.85 of the Tariff Schedules of the United States (in the "benzenoid" part of schedule 4) as a drug obtained, derived or manufactured from a product provided for in schedule 4, part 1 A or 1 B, and assessed with duty at the rate of 1.7 cents per pound plus 12.5 percent ad valorem. Plaintiff claims it does not belong in the "benzenoid" part of schedule 4 and should be classified under item 437.32 as an antibiotic processed beyond the natural state, dutiable at the rate of 5 percent ad valorem.

Plaintiff relies on headnote 3 to part 1 of Schedule 4 [1] which it claims has the effect of removing Rimactane from the normally tenacious coverage of the part as expressed in its headnote 1.[2]

Headnote 3 provides that part 1 of schedule 4 does not cover cyclic organic chemical products having a benzenoid, quinoid or modified benzenoid structure, which are produced from animal or vegetable products in which such structure occurs naturally.

Rimactane is unarguably a cyclic organic product with a benzenoid structure. The dispute centers on the nature and origin of the benzenoid structure.

Plaintiff argues that the benzenoid structure in Rimactane is the same as that found in rifamycin B, the natural, mold-produced precursor material. Defendant replies that in the intermediate stages of producing Rimactane the benzenoid structure of rifamycin B is changed to a quinoid structure making the ultimate reversion to a benzenoid structure a synthesis and not the continuation of the selfsame original natural structure required by headnote 3. Plaintiff seeks to minimize the distinction between benzenoid and quinoid drawn by defendant and further emphasizes the unchanged presence of the same basic ring structure at all stages of the production of Rimactane.

■ In light of my understanding of headnote 3, I conclude Rimactane cannot benefit from its exclusionary effect. The

---

1. 3. With the exception of the natural products provided for in subpart C, this part does not cover cyclic organic chemical products (such as, but not limited to, tannic, gallic and pyrogallic acids; estrone, estradiol, and corticosteroids; morphine, ergot, and cinchona alkaloids; rotenone; phenylalanine; tyrosine; epinephrine; and thymols) having a benzenoid, quinoid, or modified benzenoid structure, which are produced from animal or vegetable products in which such structure occurs naturally, unless such cyclic organic chemical products were obtained, derived, or manufactured in part from any product provided for in subpart A, B or C of this part.

2. 1. Except as specifically set forth in the headnotes to other parts of this schedule, all products described in this part shall be classified hereunder even if more specifically described elsewhere in this schedule. Any product described in both subparts B and C of this part shall be classified in subpart C.

most straightforward reading of the head-note is to require the benzenoid structure of the imported product to be the very same structure found in the original animal or vegetable product from which it was produced. By this I mean the original structure, be it benzenoid, quinoid, or modified benzenoid, must remain identifiable at all distinct stages of the production process.

The molecular structure of rifamycin B, the precursor material, is depicted as follows in plaintiff's exhibit 2 (which is essentially the same as defendant's exhibit A). The area of special interest is defined by a dotted line. Within those lines our attention will be particularly drawn to the hexagonal ring on the right side.

Rifamycin B
(The Natural Precursor)

Both the right and left rings in this structure are properly identified as benzenoid by virtue of their resemblance to the structure of the compound benzene as shown in the following illustration:

The first intermediate product, known as rifamycin S, represents a modification of the right ring of the initial benzenoid ring structure characterized by the bonding of oxygen atoms at positions 1 and 4. It is depicted as follows in defendant's exhibit C:

Rifamycin S

As pictured above the ring structure has been transformed to one which most closely resembles the structure of the compound quinone as shown in the following illustration:

The ring structure of rifamycin S is therefore most accurately described as quinoid and is no longer the same structure as appeared in rifamycin B.

In the next intermediate product, known as 3-formyl-rifamycin SV, a benzenoid structure has been restored to the ring under examination as illustrated in defendant's exhibit I:

Rifamycin SV

The restored benzenoid structure is then retained in the structure of the final product, Rimactane, as illustrated in plaintiff's exhibit 1:

Rimactane*
(The Imported Product)

The sequence of events just described does not show the identifiable continuity of an original benzenoid structure as required by headnote 3. Rifamycin S represents a modification of the right ring of the original benzenoid ring structure which terminates its existence and creates a structure most accurately described as quinoid. Plaintiff failed to persuade the court the structural changes which took place in the production of rifamycin S can be minimized or treated as having no effect on the original benzenoid structure.

The court cannot subscribe to plaintiff's argument that the fundamental relevant structure is only the skeletal carbon ring and its associated electrons (the aromatic sextet) and that the bonding to oxygen which creates the quinoid resemblance has no more significance in principle than the addition of a peripheral hydroxyl or acetyl group. The headnote in question does not treat the subject in such an irreducible and abstract manner. It speaks of specific and distinct structures, characterized by their resemblance to the compounds benzene or quinone. When a strong resemblance to quinone supplants the resemblance to benzene in the course of production, the original benzenoid structure is at an end.

At the stage of rifamycin S the bonding of two oxygen atoms to the right ring has the unavoidable significance of transforming the ring structure to one which resembles quinone, not benzene. The subsequent restoration of benzenoid structure at the next intermediate stage (3-formyl-rifamy-cin SV) is not a continuation of the original, natural benzenoid structure, but the synthesis of such a structure.

The benzenoid structure of the imported Rimactane can therefore be recognized as synthetic, derived as it was from the benzenoid structure of 3-formyl-rifamycin SV, which in turn was synthesized from the quinoid structure of rifamycin S. The quinoid structure of rifamycin S was itself synthesized from the original natural benzenoid structure of rifamycin B. Rifamycin S must therefore either be classifiable as a cyclic organic chemical under item 403.60 of the TSUS (a subpart B classification) or, if it has medicinal properties, a drug under item 407.85 (a subpart C classification). In either event, the imported Rimactane is shown to have been obtained, derived or manufactured in part from rifamycin S, a product provided for either in subpart B or C of part 1, a circumstance which nullifies any possible exclusionary effect of headnote 3 and fully supports the correctness of the classification.

■ The previous analysis also negates plaintiff's additional argument that benzenoid, quinoid and modified benzenoid structures are to be considered as a single class and presumably, a change from one to the other in the course of production would not affect the "natural" occurrence of the final structure. Though they are linked together in the statute and though they may have a strong "family resemblance" and even occasionally describe the same compound, their separate enumeration requires that they be considered as distinct structures when it is reasonable to do so. In this instance the description of the structure of rifamycin S as quinoid surpasses in accuracy any alternative description and cannot be ignored.

■ Plaintiff's argument from legislative history is similarly limited by the interpretation placed on headnote 3 by the court. To the extent headnote 3 was intended to save from "benzenoid" classification those products which would not have been classified under the so-called "coal tar provisions" of the Tariff Act of 1930, it performs

that function only for products whose benzenoid structure is derived in an intact manner from the precursor material and not for those whose structure is synthetically created from an intermediate product even though it is a restoration of the original structure.

In sum, the court agrees with the defendant's position that if, in the production of a cyclic organic chemical product, the original natural benzenoid structure is modified to become a quinoid structure the later reversion to benzenoid structure is a synthesis. That product is not entitled to the exclusionary effect of headnote 3 which is limited to products whose relevant structures have remained intact from the time of their first natural occurrence.

Judgment will be entered accordingly.